I'd like to introduce my client Erin Lawrence. She's in the gallery today. In the response brief, Pally declared that this is a simple case and I have to take issue with that. I think this is not a simple case. For the purpose of illustration, I'd like to consider or pretend today that the well here is Anita's property. The bench or bar here is the Creason property and everything out here is where the campground is located on property that is now owned by Karen and a lot of other people. What Karen contends is that the grant of the property from her to Anita, which conveyed an undivided interest, 50% interest to Anita, served an easement that creates an easement opportunity not only to Creason property, but to Anita's property. But to the property on which the campground is located. Without mentioning the campground property whatsoever, it seems to me that if this is a simple case and if that's what happened, you would have to at least mention that in the grant reserving the easement that this property is somehow to benefit from the grant. Reservation of the easement. That wasn't done. So as the person accepting the grant, Anita is left to guess what the grant is supposed to be. At the time the grant was made, Karen owned no ownership interest in the property to the north of the Creason property. And at most she owned an easement in gross across the Creason property from a prior lawsuit where that was settled that the owners of this property, who were the same as the owners of this property, had the right to an easement across here. It not only granted an easement opportunity to the campground property, but it granted an easement in gross to Karen and it granted an easement in gross to Anita's now deceased husband, Butch. And so what then did the easement grant? Or what did Karen reserve? The first clause in the language is that she's reserving the easement for herself, which I think is clearly an easement in gross. It's not in reference to any of her property, and she had no property connected to this reservation of the easement. Secondly, she reserved an easement to the owners of the property to the north. I think that both sides agree that the only people mentioned in the record as property owners to the north are the Creasons. And so she somehow or another created an easement opportunity to the Creason's property. The Creason's property is the only dominant estate here, and Anita's property is a serving estate. Now, there might be some room to argue about that. But if so, the argument must be resolved in Anita's favor, because the grantor of property must, at pages 9 and 10 of my brief, it's clear that the law says that any ambiguity must be construed against the grantor and the grantee's favor. So if that isn't the case, then what we have here is when Anita was negotiating the rights to the property that she now owns in fee simple, which is illustrated by the well, she didn't know what she was bargaining for. She didn't know that there would someday be people outside of her control crossing her property. Prior to losing the lease on the campground, Anita allowed people to go across her fee simple property, and she can control who those people are. Now that she doesn't and can't control the people who cross her property pursuant to this easement, which is a result of the trial court's order, she can't stop them from doing it. She can't tell them, you can never come through here again if you leave the gate open. You can't come through here again if you use my dumpster. You can't come through here again if you cut my locks. And if they leave the gates open and my fishing club members have their boats stolen, I can do nothing about it, other than to complain to Karen now, who is in control of the people who can cross Anita's property. This, I think, devalues greatly the property that Anita now owns and can enjoy. It interferes with her ability to control the people who cross her property. Since this is not a clear grant of an easement that was drafted by Karen, I think the court has to construe language against Karen and in Anita's favor. And the linchpin issue here is that there is other access. The record shows that there is other access across the life estate that Karen owns to this property. So unlike when the easement across the Treson property was granted and this owner and this owner were the same and there was a need to join those two properties anyway, we've lost that. If Karen wanted to reserve an easement that she could use for commercial purposes sometime in the future, perhaps sometime in the future, because there is no evidence that she would ever have that property that she now had the life estate in, she should have done so clearly and unambiguously. And the fact that she didn't should be construed in Anita's favor. Thank you. I have a couple. When Anita put the fence up, the gate up, was Karen allowed to go in and out to the property? Karen was always allowed to. Karen had a key and we got letters, tons of letters saying that she and Claude were both welcome to go through, not only as people with rights to the easement, but as family members they could go in and out. What Karen was complaining about is that, and she may say that she wasn't allowed, but I happen to know that we never prohibited her from going in and out. The most she complained about is I think she had gravel trucks going back and forth that the gate at one point interfered with. And it was to remedy. And so no, Karen was not prohibited and would not. Some of the analogies that were brought up in the trial court were agreed to that yes, personal reasonable use is certainly what she bargained for and what she's allowed to have. But when you increase that to any number of campers who aren't under Karen's control, let alone Anita's control, it changes the nature and the burden on the easement. Why aren't the campers under Karen's control? They possibly could be, but they haven't been. What do you mean by control? Well, for example, you're going to lose your rights to camp here if you don't keep the gate shut for Anita because her campers or her fishing members are losing boats and having things damaged as a result of... Anita has campers up to keep them down? No. If you look at the aerial map, both of these are old gravel pits and Anita's property has fishing ponds on it. And Anita still runs a fishing club on her property. Oh, okay. And then there's a common lake with the Creason property. The property line goes right down the middle of the lake. And then on the other side of Creason property there are ponds as well. And so there's really no way for Anita to fence off this roadway and prevent Karen's campers or anybody that comes in after Karen's campers leaving the gate open to prevent boats from being stolen and dumpsters from being used without permission and general mischief being done to her property. Hasn't Karen... the use of the easement is in the same manner consistent with the way the easement's been used for decades, isn't it? No. The use of the road is. Okay. But the easement was not there until the conveyance between Karen and Anita. And what you have to look at is, well, why would Anita accept an easement for something that is unknown to be going to happen in the future? There's no longer, since Anita now owns this property in Pee Simple, and this property and Claude's other property at the time of easement are a single piece of property gain access from the other route. There are no restrictions in the grant, though, are there? There are no restrictions, but what easement is established? Certainly an easement in gross and an easement up to decreasing property. Decreasing property by this grant, the language in this grant, is the only dominant estate that you can find based on the language in the grant. The law says that you can't use an easement to benefit a property that isn't the dominant estate. And that's why Karen argued that, in fact, that language does cause the campground to be a dominant estate, but it doesn't. There's no way. There's no mention of this campground. It's the property to the north, and Karen in her brief admitted the only thing that she can admit, that decreasing property is the only property to the north. You're limiting to, you say the road has been used this way for a long time. The road has, yes. In fact, there are fewer campers now than there used to have, right? Well, maybe fewer campers, but that doesn't mean that she can't have and isn't having her own fishing club members come back to her ground and crossing the campground. While it's not part of the record, Anita would tell you today that there are many more people going through the property than there ever were before. I mean, the restriction on, even if it's an easement in gross, the restriction for personal non-transferable, it deals with the fact that you can't inherit or otherwise transfer the right. Isn't that the restriction on an easement in gross? It's reasonable use is what the question is. Even if it's a reason, even if it's an easement in gross, it's an easement in gross to affect the easement across, or to benefit the easement across the precinct property, and then it's now being used to benefit the campground property, which isn't mentioned anywhere. And so what they're trying to do is they're trying to say with all these other facts and the fact that it's always been used, Anita should have known that what we were doing was this. But how should have she known that? You have to look at the language of the easement itself, which doesn't mention this property. And you have to look at the facts surrounding the date of the transfer when Karen owned no property back there, had no beneficial interest in any property back there. Can you give me a little history of this land? Karen had title to the campground where the campground was discussed in 78, 79? No, no, Karen never had title to this property. Her father had it. Your father had the whole patch here at one point? The whole property that is not only shows a campground on it, which is a little section, kind of a square section. If you're looking north, and then there's a section to the right that goes all the way to the road, and you can see on the aerial map that Karen owns a fee simple where her homestead is within that property. So Claude, Claude, the father, owned both properties that Karen now has a life estate on. One of those two properties has the campground within it. Karen, Claude, and Anita established the campground, I think in 78 or whenever it was, shortly after these properties were purchased, I believe. Anita basically did all the work to run the campground until she lost her lease in 08. What was the status between 78 and 98? Well, the status was Claude Jr., or Butch, and Anita's husband, and Karen, owned this property, which is called the Mounds property, and another section over there called the Hayground. When Butch died, Karen filed a partition action. As a result of the partition action, it was settled that Anita walks away with the Mounds grounds, and Karen has the Hayground. Karen then sold off the Hayground and had no ownership interest in the Mounds ground or in the property. I'm more interested in the easement side, the history of the easement. Karen originally had this land that Anita now owns. Right. In 50% ownership with Claude, or Butch, Anita's brother and sister. Right. All right, and that's in 78? That's in 78, and there is no easement across that property at that time. All right. The easement and the campground was run essentially by Anita at that point? Right, although all three names were on that. Okay. Mounds Lake Club, they called it. All right. So Karen gives her half of what is now Anita's property in the south. They trade the Hayground, whole ownership of the Hayground. And then gets her easement at that point. Reserves her easement. All right. Prior to that, there was no easement. There was just people going up this road and back. Use of the road in Fee Simple. All right, thank you. Any other questions? No, thank you, Mr. Edmund. Mr. Johnson? May it please the Court. Good morning, Justices. Good morning. The case is rather simple, but in order to determine easement rights, we have to look to the easement. Seems like a logical place to start. The easement itself says, reserving unto Grantor, her heirs, successors, and assigns, and then continues to talk about these people to the north. For the free and uninterrupted use, liberty, and privilege of passage over, along, and upon the real estate, and then it continues. We have an appurtenant easement clearly in Karen. The Supreme Court of this state has determined that easements should be And engrossed easements are not favored. Clearly, this easement is appurtenant. Otherwise, it wouldn't have said, her heirs, successors, and assigns. Otherwise, it wouldn't have said, in perpetuity. So this engrossed argument cannot stand. And interestingly, I believe that's the only way they can prevail, they being the appellant in this argument, as if it is an engrossed easement. But clearly, it's not. Once that's determined, then we have to look to see if there's any restrictions. Typically, when you draft an easement, at least the way I do and the way other lawyers do in this state, if you intend for a restriction for agricultural purposes, for commercial purposes, however, whatever restriction you want, you state that in the easement. When there is no restriction, the Illinois Supreme Court has told us what that restriction is, implied, and that is an implied use that is reasonable. Who determines reasonable? Well, that would be, as in most easement cases, probably a trial court. If there is a problem with use of an easement, it's an enforcement issue, Well, because it's clearly, isn't reasonableness to a large extent a fact question? Yes. Yes. I mean, are true affidavits out here both saying different things? There are. They say somewhat different things? You're correct. Typically, it is a fact. I mean, I'm guessing what I'm asking is, should summary judgment be granted? I believe it can be, because this is a unique, and was, and quite honestly, I've never won a summary judgment in an easement case like this. Usually, it does go to a trial or some other method, but in this case, it's so clear cut because the judge at the trial court level looked at all of these facts and said, what do we have here? We have an easement that's been around since the 1990s. Since the 1970s, campers have used this road. So what is the burden on the servitude? Has it increased? No. It has decreased. At the time that was, the time of the use up until 08, it was not used as an easement. Correct. I mean, not until 90. Well, even after 90. Right, you can't use a servitude until you first have an easement, but that is correct. Since that time, I believe the proper question would be, what is the burden on this road? Easement, road, however you want to call it, what's the burden on this? And I believe that's what the trial court judge looked at and said, well, the burden hasn't really increased. Regardless if it's Karen letting campers on this property, whether it's Anita, or whether it's Joe Schmo off the street, the question is, what is the burden on this property? And does it overly burden the servitude? And it does not in this case. Like you said, typically these are fact questions, but in this case it's a pretty clear cut. And the judge rightfully determined summary judgment was appropriate. But isn't there an issue when you say the burden? Because they were operated as one until this easement, you don't ever have the issue of who controls that access, or who left a gate open, or who stole a boat. Because as one, those issues could be dealt with by Anita. Well, now she's got a property under servitude that's being burdened by something she says she has no control over, that she can't stop these people coming in. So doesn't that create, I mean I know that there's some disagreement about whether there's more campers or less campers, but really when you're talking about burden, now things have changed, haven't they? Might have been used all the same, but how you can stop whether or not this canoe all of a sudden is lifted and is off of there, well, she can't do anything about that, which wasn't the case prior to 08. So I guess, how would you address that saying that there really is no issue of fact? Prior to the easement being, I believe the easement was created in 98 or 99. Oh, 98, excuse me. I think the proper question is, what are Karen's rights? And once you determine Karen's rights in this easement, has she exceeded those rights? So this case is about determining what rights she has. The issue is, can these campers go onto this property, use this easement? Issues as to people cutting mocks and all this other stuff, that's an enforcement issue which can be brought in with a complaint for damages later, which is probably, if that's the case, that would probably be coming. But the burden question, which is really what your question gets at, is since 98 or 99, when the easement was created, has the burden increased? And with the affidavits and that sort of thing, clearly the burden has not increased. These campers, whoever they might be, whether, again, whether it's me, whether it's you, whether it's anybody, they're all creating a burden when they use this easement or this property. So the question is not, has the burden because of the easement increased? The question is, what is the burden on the servitude? And if you start having commercial trucks and, let's say, tractors and whatnot that you see often in agricultural property, use that, and they're using it every day to start a coal mining operation back there, that may be an overburden. But in this case, these campers, regardless of the number, have been using this road for a long, long decade, since the 70s. Well, regardless of the number, I mean, that goes back to the reasonableness issue. I mean, if Karen decides to set up 50 more campsites and sells them all, rents them all, that's a terrific increase on the burden, is it not? Then we have an issue. Oh, certainly. But in this case, I believe the trial judge was absolutely correct, and he looked at the number of campers and the burden that's on the servitude and said, there really isn't an increase at all here. It's the same, if not less, since—I'm sorry, go ahead. I was just going to say, I may have a problem here. Let's say I own a house and I let people come in to use the phone. They use the phone and say goodbye to them. It's one thing for me to do that. It's another thing for my neighbor to say, yeah, go into their house and use the phone. It's no problem. Is that a bad analogy? Well, it's— Or incorrect? No. We need to back up and look at what is the scope of the easement that we can use in this case. It's certainly unrestricted. There are no restrictions, contrary to counsel's argument that restrictions should be put in the deed. By the way, if that's the law, tens of thousands of easements in Illinois are incorrect. That would be an incredibly bad policy. But what are Karen's rights in this easement? If you follow their counsel's analogy to the extreme end, which is this is an engrossed easement, then only Karen can use this easement, only her, so she has a heart attack on the property. Not even an ambulance can get back there. That's the logical end of this argument, which is clearly not correct.  Is it just Karen? Is it her neighbor? Is it the President of the United States if he happens to show up in this property? Then we get into is that use reasonable? And as the trial judge did here, he weighed the reasonableness and rightly found the summary judgment was appropriate looking at the facts of this case. It is somewhat of a fact issue. But when there are no genuine issues of material fact, then summary judgment is appropriate, as we all know. In this case, nothing in Karen's affidavit could rightfully be contradicted when we talk about the use of this property. How much, how many campers have used this property? It can't be truthfully denied the number of people. And since the 90s, late 90s, it has the burden on this property, even though the easement existed then, has not been materially increased. There are several Supreme Court cases, by the way, that talk about an easement similar to ours, very similar to ours. One of them is the Messinger case, which is a great case. We have an easement in that case for an individual. And the issue in that case was whether that easement could be used for adjoining lots. They're very, very similar, although they have adjoining lots in this case. Counsel, that's two minutes. Thank you. The Supreme Court in that case said yes, and they looked at the surrounding circumstances, which this court, the trial court, did at the trial court level. There is also this question as to what is the dominant estate. Clearly, the land to the north is the dominant estate. That's stated in the easement. Anita's affidavit, by the way, says she thought at the time the easement was created that this campground property was also a dominant estate. She pretty much says that in paragraph 8 of her affidavit. There's some question, as counsel brings up in his reply, as to whether Karen intended to use that personally or Karen intended to let others use it. It doesn't matter. It's still a dominant estate. Again, if campers had used this property for decades, there cannot be, with the same number of campers or fewer campers, an increase in this burden. And the trial court saw that and correctly found summary judgment appropriate. He rested on the affidavits, which were truthful. To my knowledge, Karen's was truthful.  And this court should affirm that decision. Any questions? Thank you, Mr. Johnson. Thank you. Mr. Elman. Perhaps I haven't been clear. I would agree that the issue of whether or not this easement is suffering a greater burden or bearing a greater burden would be a question of fact. But that's not why I raised the issue. Quite clearly, if you have 50 guests in your backyard, that's different than having 50 non-guests in your backyard. And I bring that up as an example in that when Anita got her full interest in Full Fee Simple in this property in exchange for her half interest in the Mounds property, she had to look at the instrument that Karen provided her and say to herself, what can Karen do with this easement? And I suggest there's nothing in that easement language at all to tell you that Karen is going to use it to benefit the property she's now using to benefit. There's no mention anywhere in that easement language that it is intended to use this. So at best, Anita's giving up half an interest over there and accepting a half of interest over here, thinking, well, if Karen wants to go back and forth across my property, that's fine. I'll bargain for that. That's a good deal. Now, not once until Anita gave up the campground, had to give up the campground, did Karen ever have reason to have anybody she wanted to invite back there to cross that road. And so I only bring the issue of more use across the easement versus more use across the Fee Simple with guests versus non-guests to demonstrate that the impact it has on what Anita had to bargain for or what Anita did bargain for. And as grantor, it was incumbent upon Karen to make clear what it is that I'm wanting to do with this easement that I'm reserving. And she did not and could not do that. Counsel's argument about every easement in the state having problems is false. It's got nothing to do with how many easements try and make this property a dominant estate, two properties over, without mentioning this property. I can't find one in the case law. And so if you affirm the trial court what you're doing to Anita is saying, Anita, tough luck. You couldn't guess at what you were bargaining for, but that's your problem. And instead what the law says is, no, that's Karen's problem. She's the grantor. She has the obligation of making it clear what it is that she's reserving for herself and others. And if you look at that language, she made the creasant property a dominant estate. Perhaps she wanted to be generous with the creasants and make sure they had access to their property. And she had an easement and gross for herself because her easement is not tied to any property, any dominant estate. And I do think it's an easement and gross. She's only entitled to use it for her own personal use. Well, aren't you in an easement and gross, aren't you eliminated with personal uses? I mean, it's a question of whether it's reasonable use and whether she's allowing other people, other campers to do that. That's not restricted easement and gross. And, Your Honor, I don't know that I briefed that issue because I don't think you get to that. I don't think you get to that point because even if it's an easement and gross, it's not saying what its benefit. It's not saying I'm burdening your property over here to get to this property over here. Well, but if there's an unlimited conveyance of an easement, then that's a grant of unlimited reasonable use then, isn't it? Well, to gain access to the dominant estate and an easement opportunity. And my memory is that an easement and gross is more restrictive than that. That's why counsel's so adamant that this is an easement opportunity. But where's the restriction in the language of this easement? There is none. Other than it's not mentioning the property she's intending to benefit, and that's improper under the law. You can't have an easement opportunity for this property and then decide I'm going to expand it to benefit this property. Well, let's assume it's an easement and gross. Where's the restrictions on as long as it's unlimited reasonable use? Isn't that right?  What would have been Karen's unlimited reasonable use when she owns nothing up here? It would have been zero. And so that's why I go back to the fact that once she starts using it to benefit this property, she's increasing a burden that's not been made clear. She's skipping. I'm sorry. She's skipping the property to which she connected. Theoretically, I don't know if it could be done, but this property owns an easement across the Creason property. If she wanted, she certainly could have reserved for herself an easement on top of the easement. She didn't do that, which makes it even more ambiguous as to what she was trying to do. Now, I'd like to ask another question. You had mentioned earlier that there was other access to the campground. I'm looking at this map, and it's hard to read in some ways. Where would that be? If you look, the upper corner, which would be the northeast corner of the square section where the campground is located, there's a pathway, albeit not gravel, through there, four-wheelers that go through there. You can sort of see the path along the upper edge of the pond there. You can sort of also see paths going through the life estate property on the other section to the east. So it's accessible, but not if you have a... Well, you know what? It might cost as much to gravel the road as the value that Anita has less in her property now that she's getting a use of that roadway that wasn't ever expected because it wasn't made clear in the grant. Thank you. Thank you both for your arguments here today. This matter will be taken under advice.